UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**26-CR-20035-WILLIAMS/LETT**
Case No. _____

18 U.S.C. § 1349
50 U.S.C. § 1705
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

**TOMÁS NIEMBRO CONCHA,**

**Defendant.**
_____/

FILED BY ____ BM ____ D.C.

Feb 4, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INFORMATION

The United States Attorney charges that at all times material to this Information, unless otherwise specified:

## BACKGROUND

1. Nodus International Bank ("Nodus" or the "Bank") is an International Banking Entity organized under the laws of Puerto Rico. It is regulated by the Puerto Rican Office of the Commissioner of Financial Institutions (Spanish acronym "OCIF") and began operations on or about February 22, 2010.

2. Defendant **TOMÁS NIEMBRO CONCHA**, a part-time resident of Miami-Dade County, Florida, was a co-owner of Nodus and served as its president and chief executive officer and was a member of the Bank's board of directors.

3. Co-defendant Juan Francisco Ramirez ("Ramirez"), a resident of Miami-Dade County, Florida, was a co-owner of Nodus and served as the chairman of the Bank's board of directors.

4. **TOMÁS NIEMBRO CONCHA** and Ramirez bought Nodus in or around May 2017. In October 2023, OCIF placed Nodus in receivership and revoked its license.

5. Co-defendant Emilio Santandreu ("Santandreu") is the owner and chief executive officer of Our Microlending, a Miami-based microfinance institution.

6. Nodus Finance LLC ("Nodus Finance") is a Miami-based finance company co-owned by **TOMÁS NIEMBRO CONCHA** and Ramirez.

## COUNT 1
### Conspiracy To Commit Wire Fraud
### (18 U.S.C. § 1349)

7. From in or around August 2017, through in or around October 2023, the exact dates being unknown to the United States Attorney, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### TOMÁS NIEMBRO CONCHA,

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with others known and unknown to the United States Attorney, to knowingly and with intent to defraud, devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

8. The purpose of the conspiracy was for **TOMÁS NIEMBRO CONCHA,** Ramirez, and their co-conspirators to unjustly enrich themselves by obtaining money from Nodus through

complex fraudulent schemes, including by making or causing material misrepresentations to be made to the Bank's board of directors, officers, and OCIF regarding the true nature of these transactions.

## Manner and Means of the Conspiracy

The manner and means by which **TOMÁS NIEMBRO CONCHA,** Ramirez and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

9.     **TOMÁS NIEMBRO CONCHA,** Ramirez, and their co-conspirators designed and engaged in fraudulent schemes to obtain money from Nodus by concealing from Nodus's board members and executives that certain investments and other transactions were for the benefit of **TOMÁS NIEMBRO CONCHA** and Ramirez, in violation of Nodus policy and Puerto Rican legal and regulatory requirements regarding insider transactions. To execute the scheme, **TOMÁS NIEMBRO CONCHA** and Ramirez obtained Nodus funds for their ultimate benefit through sham transactions involving Our Microlending and Nodus Finance.  The schemes entailed the following:

### *The Our Microlending Scheme*

10.     **TOMÁS NIEMBRO CONCHA** agreed with his co-conspirators (including Ramirez and Santandreu) to cause Nodus to buy certificates of investment from Our Microlending. These investment products yielded fixed interest rate payments. **TOMÁS NIEMBRO CONCHA** and Ramirez arranged for Nodus to purchase these investments so that Our Microlending could then use the funds received from Nodus to issue personal loans to **TOMÁS NIEMBRO CONCHA** and Ramirez.

11.     To cause Nodus to make these investments, **TOMÁS NIEMBRO CONCHA** and Ramirez misrepresented the nature of the investments to multiple parties on multiple occasions, omitting any mention that Nodus's investments in Our Microlending were personal loans to

3

themselves. First, they did not disclose the truth about the investment certificates in unanimous board of directors' resolutions approving the initial purchases and renewals of the certificates, depriving at least one board member of material information critical to the authorization of such investments—that the true recipients of the funds from Nodus's investments in Our Microlending would be **TOMÁS NIEMBRO CONCHA** and Ramirez. Second, they did not disclose the true purpose of the investment certificates to Nodus's Comptroller, who was responsible for safeguarding Nodus's assets and making legally required disclosures to OCIF. Third, they did not disclose the true structure of the financial transactions behind the investment certificates to OCIF, which strictly prohibited International Banking Entities from granting loans to shareholders without OCIF's authorization.

12.     **TOMÁS NIEMBRO CONCHA** and Ramirez knew of their plan's illegal purpose and willingly participated in it, using secrecy to advance the plan and to avoid scrutiny that would threaten or impede their illegal scheme to obtain Nodus funds by fraud.

13.     As a result of this scheme and the misrepresentations of **TOMÁS NIEMBRO CONCHA** and his co-conspirators, Nodus approved the initial purchase of four investment certificates as well as their subsequent renewals between about August 2017 and about October 2023.

14.     In furtherance of the scheme, **TOMÁS NIEMBRO CONCHA** and Ramirez directed Nodus to complete the purchase of these investment certificates by sending funds via interstate wire transfers from Nodus to Our Microlending, in the Southern District of Florida.

15.     In total, **TOMÁS NIEMBRO CONCHA** and his co-conspirators fraudulently obtained approximately $11.2 million from Nodus through the fraudulent scheme with Our Microlending.

### The Nodus Finance Scheme

16.     Between in or around January 2018 and in or around September 2021, **TOMÁS NIEMBRO CONCHA** and Ramirez caused the Bank to purchase at least 47 promissory notes totaling approximately $25.3 million from Nodus Finance without authorization from OCIF. Several of these purchases were part of a fraudulent scheme through which **TOMÁS NIEMBRO CONCHA** and Ramirez siphoned funds from the Bank to enrich themselves.

17.     Specifically, **TOMÁS NIEMBRO CONCHA** and Ramirez fraudulently induced the Bank's board of directors and Comptroller to agree to, or to facilitate, the purchase of promissory notes from Nodus Finance by omitting material information—namely, the fact that they were using the proceeds of the promissory notes not for Nodus Finance's lending business but for their own personal benefit, including to make personal investments in third-party companies, pay personal mortgages, or cover personal credit card expenses, among other purposes.

18.     In furtherance of the scheme, **TOMÁS NIEMBRO CONCHA** and Ramirez directed the Bank to purchase promissory notes from Nodus Finance by sending funds via interstate wire transfers from the Bank to Nodus Finance.

19.     **TOMÁS NIEMBRO CONCHA** and Ramirez then caused the Bank to accept a delinquent, uncollateralized, and nonperforming loan portfolio from Nodus Finance as payment for Nodus Finance's debt arising from the 47 promissory notes purchased by the Bank for $25.3 million, resulting in a total financial loss to the Bank.

### Other Fraudulent Loans

20.     During the relevant time period, **TOMÁS NIEMBRO CONCHA** and Ramirez fraudulently caused the Bank to directly originate loans to third-party entities purportedly for the benefit of those companies but in fact for their own personal benefit.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Violate the International Emergency Economic Powers Act
### (50 U.S.C. § 1705)

21.    From in or around 2021, through in or around 2023, the exact dates being unknown to the United States Attorney, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## TOMÁS NIEMBRO CONCHA,

did knowingly and willfully combine, conspire, confederate, and agree with other persons known and unknown to violate a license, order, regulation, and prohibition issued pursuant to the International Emergency Economic Powers Act, in violation of Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Part 591.

### Purpose of the Conspiracy

22.    The purpose of the conspiracy was for **TOMÁS NIEMBRO CONCHA** and his co-conspirators to circumvent U.S. sanctions to engage in prohibited financial transactions with Individual 1—an individual designated as a Specially Designated National by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") for operating in the oil sector of the Venezuelan economy.

### Manner and Means of the Conspiracy

The manner and means by which **TOMÁS NIEMBRO CONCHA** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

23.    To satisfy an outstanding loan of approximately $2.5 million that Individual 1's company had with Nodus, Niembro and Individual 1 devised a scheme to cause the Bank to

6

foreclose on Individual 1's home in Southampton, NY to satisfy the loan balance, for which they obtained OFAC authorization, but separately reached a "private" agreement to induce the Bank to sell the property back to Individual 1 for $4 million—a transaction that was strictly prohibited by U.S. sanctions, and not otherwise authorized by OFAC.

24.    Individual 1 used a front company, Entity 1, to effect the prohibited transaction. Niembro and Individual 1 knew that Entity 1 would act as a nominee buyer and that Individual 1 would be and was the ultimate beneficial owner of the house upon Entity 1's purchase of the property.

All in violation of Title 50, United States Code, Section 1705.

## FORFEITURE ALLEGATIONS

1.    The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **TOMÁS NIEMBRO CONCHA**, has an interest.

2.    Upon conviction of (i) a violation of Title 18, United States Code, Section 1349, a conspiracy to violate Title 18, United States Code, Section 1343, and/or (ii) a conspiracy to commit a violation of Title 50, United Sates Code, Section 1705, as alleged in this Information, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such offense(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

_____
JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY


_____
FELIPE PLECHAC-DIAZ
ASSISTANT UNITED STATES ATTORNEY


_____ FOR:
MARGARET A. MOESER, CHIEF
CRIMINAL DIVISION, MONEY LAUNDERING,
NARCOTICS AND FORFEITURE SECTION
U.S. DEPARTMENT OF JUSTICE


_____ FOR:
JAVIER URBINA
SAMIR PAUL
TRIAL ATTORNEYS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO.: **26-CR-20035-WILLIAMS/LETT**

v.

TOMÁS NIEMBRO CONCHA,

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendant.

**Superseding Case Information:**

New Defendant(s) (Yes or No)_____
Number of New Defendants _____

**Court Division** (select one)
- [x] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

Total number of new counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I [x] 0 to 5 days
   - II [ ] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Judge Lauren Fleischer Louis Magistrate Case No. 25-MJ-02526-LFL

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Felipe Plechac-Diaz
Assistant United States Attorney
FL Bar No.          0105483

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   **TOMÁS NIEMBRO CONCHA**

**Case No**: _____

Count(s) #: 1

Conspiracy to Commit Wire Fraud

18 U.S.C. § 1349
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

Count(s) #: 2

Conspiracy to Violate the International Emergency Economic Powers Act

50 U.S.C. § 1705
* **Max. Term of Imprisonment: 20 years**
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Not more than 3 years
* **Max. Fine:**  $1,000,000

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. **26-CR-20035-WILLIAMS/LETT** |
| TOMAS NIEMBRO CONCHA, | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.


Date: _____

_____
*Defendant's signature*


_____
*Signature of defendant's attorney*


_____
*Printed name of defendant's attorney*


_____
*Judge's signature*


_____
*Judge's printed name and title*